433 A.2d 469

COMMONWEALTH of Pennsylvania, Appellee,

v.

Charles E. SLEIGHTER, Appellant.

Supreme Court of Pennsylvania.

Submitted May 18, 1981.

Decided July 10, 1981.

Blake E. Martin, Public Defender, Douglas W. Herman, Asst. Public Defender, for appellant.

John F. Nelson, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION

FLAHERTY, Justice.

In the early morning hours of September 19, 1978 William Paul Williams met his death as a result of a severe beating inflicted upon him in the lobby of the Madden Hotel in Chambersburg and in the alley adjacent to the hotel. Appellant herein and co-defendant, James Harmon, were charged as a result of this incident. Harmon was convicted in a non-jury trial of murder of the second degree and

robbery. Appellant entered a plea of guilty to the charge of murder generally in exchange for the Commonwealth's agreement to nolle pros all other charges against him. A degree of guilt hearing was held on March 5, 1979. On March 7, 1979 the lower court found that the degree of appellant's guilt rose to second degree and on that date sentenced the appellant to life imprisonment. Motions in arrest of judgment were filed, argued and denied. This is a direct appeal from the lower court's judgment of sentence.

At the degree of guilt hearing, by stipulation of counsel, certain documents were admitted into evidence including the autopsy report, excerpts from appellant's guilty plea colloquy, the preliminary hearing testimony of four witnesses and a stenographic report of a statement given by appellant in the presence of his counsel and attorneys for the Commonwealth. Viewing the evidence in a light most favorable to the Commonwealth, *Commonwealth v. Bastone*, 466 Pa. 548, 353 A.2d 827 (1976), the following facts evinced at the degree of guilt hearing.

Appellant and Harmon were in the lobby of the Madden Hotel along with the victim, Mr. Walters. Earlier in the evening there had been some discussion concerning a gambling debt Mr. Walters allegedly owed appellant. Appellant became upset with Walters, at which time he hit him and demanded that Walters surrender his rings to appellant. Upon Walters' refusal to do so, Harmon and appellant began to kick and hit Walters. After appellant threw Walters to the floor he took Walters' rings. About this time Harmon was going through the victim's pants pockets from which he removed change and a wallet containing $25.00 or $30.00 in cash. The wallet was handed to appellant by Harmon. Harmon also removed the victim's watch, put it in his pocket and later gave it to appellant who attempted to hide it in a police cruiser.

It was apparently at this time that Mr. Harold Keith entered the lobby of the Madden to observe the appellant standing over the victim, whose face had been bloodied by this time. Mr. Walters left the lobby of the Madden and proceeded down the alley adjacent to the Madden. Appel-

lant and Harmon followed the victim into the alley whereupon they proceeded to hit and kick him until he was unconscious. After the victim lost consciousness, appellant and Harmon dragged him to the rear of the hotel, placed him in an automobile and locked the doors. The autopsy report revealed that the victim died as a result of the blows inflicted by Harmon and appellant.

Outside the hotel and in the area where the assault continued, there were pools of blood, the victim's shoes and glasses' frames.

At the degree of guilt hearing, the Commonwealth proceeded on the theory that appellant was guilty of murder of the second degree due to the application of the felony murder doctrine because Walters was the victim of robbery and the death occurred while appellant was engaged as a principal or accomplice in the commission of that robbery. Appellant argues that he cannot be found guilty of murder of the second degree because there was no robbery due to the fact that no theft was committed. Likewise, he argues that accomplice liability cannot be based on the actions of Harmon because Harmon did not commit theft.

Appellant relies on the fact that the decedent owed him $30.00 as a gambling debt and that appellant took the rings from the victim under a "claim of right" as payment for that debt. There is no factual ground set forth by which it could be said that Harmon did not commit theft. Only the bare assertion is made.

Appellant cites *Commonwealth v. English*, 446 Pa. 161, 279 A.2d 4 (1971) in support of this argument. The facts in *English* are substantially the same as those of the instant case. There occurred a beating, resulting in the eventual death of the victim, in the collection of an alleged gambling debt. The jury found the defendant guilty of voluntary manslaughter, not murder of the second degree. In any event, the court's charge regarding robbery as the underlying felony was challenged on appeal. In a concurring opinion joined by three members of the court, Mr. Justice Eagen, reasoning that the mental element of larceny has been negated where one takes property from another under a

"claim of right," concluded that the trial court erred in instructing the jury that "[e]ven if the defendant believed that the decedent owed him money, if he tried to take the money by force or violence, it would still be robbery." This four man majority concluded that while the instruction was in error, it was harmless because the defendant was not convicted of murder of the second degree but of voluntary manslaughter. It is upon this concurring majority opinion that appellant herein relies, asserting that he took the property from the victim under a claim of right and therefore, there was no underlying felony. We disagree. Thus, we reject and overrule the instantly discussed concurring opinion of *Commonwealth v. English* which broadly and confusingly serves to exonerate a criminal defendant of liability under an easily asserted claim of right.

However, the opinion of *English* authored by Mr. Chief Justice Bell and joined by one member of the court reaches an opposite and meritorious conclusion. We adopt the view stated therein.

> This opinion written by Mr. Chief Justice Bell stated: [i]n these days when crime is rampant and disobedience and defiance of Law and Order are so widespread, it would be folly to permit a person who has an adequate remedy at law to take the law into his own hands and attempt to recover his property or his property claims by force or violence or by any other violation of the law. No matter how worthy a defendant's or any person's objective may be, Law and Order must be preserved. To allow a creditor to resort to violence or force to recover a debt would be an unwarranted Procrustean stretch of a creditor's legal rights.

Mr. Chief Justice Bell concluded that "a 'claim of right' does not entitle a creditor to resort to violence or to justify a forcible robbery of his debtor in order to collect his debts, nor can it create a defense to a felony, such as robbery, or to murder or manslaughter."

While there exists case law which provides that under certain isolated circumstances a good faith claim of right

will negate the requisite mental element for theft, certainly where there is violence or threat of violence in the assertion of that claim of right, the law does not excuse the actor who so asserts his claim. Only a peaceful taking under a good faith claim of right, where there is no breach of the peace, can even begin to approach the threshold of excusable conduct. And even then, the party asserting the claim of right has the burden of proving that there existed at the time of the taking a bona fide and reasonable claim of right. Additionally, a gambling debt is an illegal obligation in the eyes of the law. For the law to approve the collection of an illegal obligation would serve only to encourage the use of violence in the collection of such debts, the collector safe in the knowledge that there is only the sanction of a prosecution for assault, as opposed to robbery. Accordingly, we adopt the quoted language of Mr. Chief Justice Bell in *Commonwealth v. English.* To the extent that that case is inconsistent with the result reached today, it is overruled.

Appellant has raised four additional arguments: first, that there was no proof of force or threat in the effectuation of the theft, second, that intoxication negated the criminal intent in the offense, third, that no evidence of an agreement or plan was set forth upon which accomplice liability could be based and fourth, that even if appellant is liable as an accomplice he is not accountable for his co-defendant's departure from the object of their shared intent. We have reviewed these arguments and find that none raises any meritorious claim.

Affirmed.

ROBERTS, J., filed a concurring opinion in which O'BRIEN, C. J., and NIX and WILKINSON, JJ., join.

ROBERTS, Justice, concurring.

Although I agree with the opinion of Mr. Justice Flaherty that judgment of sentence must be affirmed, I cannot join that opinion, for the facts of this case simply do not warrant a reexamination and overruling of this Court's holding in *Commonwealth v. English,* 446 Pa. 161, 279 A.2d 4 (1971). It is not and has never been this Court's practice to render

advisory opinions. See, e. g., *Mt. Lebanon v. County Bd. of Elections*, 470 Pa. 317, 368 A.2d 648 (1977); *Pa. Public Utility Comm. v. Allegheny County*, 415 Pa. 313, 203 A.2d 544 (1964). Our function is to decide cases upon facts of record, not to pose and decide hypothetical issues in order to change a previous holding which some members of the Court may now consider unwise.

In denying appellant's motions in arrest of judgment, the trial court expressly stated that it did not find credible appellant's testimony that the decedent owed him a debt. Moreover, the court went on to observe that, even if the decedent had owed appellant a sum of money, appellant had no arguable claim of right to the rings which the decedent was wearing. Thus, under either of the views expressed in *Commonwealth v. English*, supra, appellant was guilty of robbery in taking by force that to which he had no claim of right. Manifestly, consideration of when and whether the existence of a bona fide claim of right may serve as a defense to a charge of robbery should await a case in which the defendant does, in fact, have such a claim. I therefore concur only in the result.

O'BRIEN, C. J., and NIX and WILKINSON, JJ., join this concurring opinion.